**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RYAN LACON, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT** |
| EDUCATION PRINCIPLE FOUNDATION d/b/a SOUTH UNIVERSITY – MEMBER, LLC d/b/a SOUTH UNIVERSITY, SAVANNAH, LLC and YODEL TECHNOLOGIES, LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Ryan Lacon, individually and on behalf of all others similarly situated, files this Class Action Complaint and Jury Demand for damages, injunctive relief, equitable relief, and any other relief deemed just and proper arising from Defendants' violations of the federal Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. In support, Plaintiff makes the following allegations based on his personal knowledge and upon information and belief.  The allegations pertaining specifically to Plaintiff are based on his personal knowledge.

**Summary of the Claims**

1.      Under the reasonable restrictions of the TCPA, Defendants are prohibited from using a prerecorded or artificial voice message to call a cellular telephone number without the recipient's prior express consent. The TCPA also prohibits Defendants from making multiple telephone solicitations in any twelve-month period to persons who have listed their numbers on the National Do-Not-Call Registry ("DNC Registry").

1

2.      Plaintiff Lacon is one of the millions of consumers who has listed his telephone number on the DNC Registry. Nevertheless, as part of a misguided recruitment campaign to convince unwitting consumers to attend South University – a private for-profit college that has long struggled with financial stability – Plaintiff received numerous unlawful calls from Defendants to his cellular telephone line without providing prior express consent.

3.      Defendants are sophisticated companies and could easily avoid these violations. But, because of lax corporate practices, a desperate campaign to recruit students, and apparent lack of regard for the sensible restrictions of the TCPA, they have not done so.

4.      To enforce the TCPA, recover statutory damages, and end Defendants' violations, Plaintiff brings this action on behalf of two nationwide classes of similarly situated consumers: (1) a class of cellular telephone users to whom Defendants directed calls using artificial and prerecorded voice messages without consent, and (2) a class of cellular telephone users whose numbers were listed on the DNC Registry but still received multiple calls from Defendants within a twelve-month period.

**Parties**

5.      Plaintiff Ryan Lacon is a natural person residing in this District.

6.      Defendant Education Principle Foundation is a Delaware corporation that wholly owns South University – Member, LLC, which, in turn, wholly owns South University, Savannah, LLC.

7.      Defendant South University – Member, LLC, is a wholly owned subsidiary of Education Principle Foundation, and has its principal place of business at 709 Mall Blvd., Savannah, Georgia 31406.

8.      Defendant South University, Savannah, LLC is a wholly owned subsidiary of South University – Member, LLC, and has its principal place of business at 709 Mall Blvd., Savannah, Georgia 31406.

9.      Defendant Yodel Technologies, LLC is a Delaware limited liability company with its principal place of business at 2250 N. Coral Canyon Blvd., Suite 202, Washington, Utah 84780.

10.      The at least ten South University campuses across the country are all wholly owned subsidiaries of South University, Savannah, LLC. For purposes of this Complaint, Defendant Education Principle Foundation, South University – Member, LLC, and South University, Savannah, LLC are collectively referred to as "South University."[1]

## Jurisdiction & Venue

11.      This Court has federal question subject matter jurisdiction under 28 U.S.C. §1331 and 47 U.S.C. § 227, *et seq*.; *Mims v. Arrow Fin. Services*, LLC, 132 S. Ct. 740 (2012). This Court also has subject matter jurisdiction under the Class Action Fairness Act because at least one member of the Classes (as alleged herein) is a citizen of a different state than one Defendant; there are more than 100 members of the Classes; and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2)(A).

12.      Personal jurisdiction is proper over the Defendants because they called, or are otherwise responsible for calling, Plaintiff in this District as part of the nationwide telemarketing campaign alleged herein.

---

[1] *See* South University, *South University Academic Catalog, Governance and Ownership* https://catalog.southuniversity.edu/content.php?catoid=20&navoid=1119#ownership.

13.     Venue is proper under 28 U.S.C. § 1391(b)(2) in this District because a substantial part of the events or omissions giving rise to the claims occurred in this District where Plaintiff received Defendants' illegal telemarketing calls. In addition, and as alleged more fully herein, venue is proper because at least certain of the improper calls were from, and/or using, telephone numbers with area codes associated with this judicial District.

**TCPA Background**

14.     According to the Federal Trade Commission's December 2019 Biennial Report to Congress, the emergence of new communications technologies has caused the number of illegal telemarketing calls to explode in recent years. Consumer complaints to the FTC about illegal calls have skyrocketed over the last 10 years, growing from about 63,000 per month in 2009 to an average of more than 315,000 per month in 2019.

15.     As one publication put it, "[i]f robocalls were a disease, they would be an epidemic." Rage Against Robocalls, Consumer Reports (July 28, 2015).

16.     Congress enacted the TCPA in 1991 to regulate the explosive growth of the telemarketing industry and protect citizens from the nuisance and invasion of privacy caused by unwanted telephone calls, described by the TCPA's chief sponsor as the "scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall." 137 Cong. Rec. 30, 821 (1991).

17.     The sheer volume of illegal telemarketing overwhelms the enforcement efforts of government agencies such as the FTC and the Federal Communications Commission. Consequently, private consumer enforcement actions play a critical role in combatting illegal telemarketing. 47 U.S.C. § 227(c).

18.     In 2003, the FTC established the National Do-Not-Call Registry, which allows consumers to opt out of receiving telemarketing calls by putting their number on the DNC Registry. Unsurprisingly, the DNC Registry is "wildly popular with consumers" and, as of September 30, 2019, has over 239 million active registrations.[2]

19.     Furthermore, the TCPA and its implementing regulations prohibit more than one call in a twelve-month period to any number listed on the National Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2).

20.     Title 47 U.S.C. § 227(b) regulates so-called "robocalls" – calls using an artificial or prerecorded voice.

21.     Specifically, the TCPA prohibits telemarketers and businesses from making any telephone call to a consumer's cellular telephone line using an artificial or prerecorded voice to deliver a message without the recipient's prior express consent. 47 U.S.C. § 227(b)(A).

22.     The FCC has explained that autodialed or prerecorded calls are prohibited absent prior express consent because, as Congress found, prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and they can be costly and inconvenient for the consumer. Prior express consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which

---

[2] Fed. Trade Comm'n, *The Do Not Call Registry*, https://www.ftc.gov/news-events/media-resources/do-not-call-registry; Fed. Trade Comm'n, *2019 Biennial Rep. to Congress* (Dec. 2019), https://www.ftc.gov/system/files/documents/reports/biennial-report-congress-under-do-not-call-registry-fee-extension-act-2007-operation-national-do-not/p034305dncreport2019.pdf.

the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 464.1200(f)(8).

23.     Persons who receive calls in violation of these provisions of the TCPA may bring an action to recover the greater of the monetary loss caused by the violation, or $500. 47 U.S.C § 227(b)(3). If the Court finds Defendant willfully or knowingly violated the TCPA, it may increase the award to up to $1500 per violation. *Id.*

**Factual Allegations**

24.     On March 17, 2021, the Federal Communications Commission issued a cease-and-desist letter to Defendant Yodel Technologies, Inc., stating, "We have determined that Yodel Technologies, LLC . . . is apparently transmitting illegal robocall traffic on behalf of one or more of its clients." *See* FCC Issues Robocall Cease-and-Desist Letter to Yodel Technologies, https://www.fcc.gov/document/fcc-issues-robocall-cease-and-desist-letter-yodel-technologies (last visited Sept. 3, 2021).

25.     South University, a private, for-profit enterprise, [3] was previously embroiled in a predatory recruitment and student loan scandal that ultimately led to a nearly $100 million settlement between its corporate owner and the Department of Justice and a coalition of state attorneys general.[4]

26.     Still, South University uses a nationwide telemarketing scheme to recruit prospective students.

---

[3] *See* National Center for Education Statistics, South University-Savannah, https://nces.ed.gov/collegenavigator/?s=GA&ct=3&ic=1&id=139579 (last visited Sept. 3, 2021).
[4] United States Dept. of Justice, *For-Profit College Company to Pay $95.5 Million to Settle Claims of Illegal Recruiting, Consumer Fraud and other violations* (Nov. 16, 2015), https://www.justice.gov/opa/pr/profit-college-company-pay-955-million-settle-claims-illegal-recruiting-consumer-fraud-and.

27.     South University currently lists on its website at least nine open positions for "admissions representatives."[5] The job description states that admissions representatives are "responsible for recruiting qualified applicants for admissions."[6] Admissions representatives are required to, among other things, "conduct a high quantity of prospect phone contacts to secure appointments and interview activity, and conduct follow-up activity with unresolved interviewees and future class applicants." *Id.*

28.     As part of that phone recruitment campaign, South University hires Yodel Technologies as its agent, lead generator, and telemarketer to contact potential students through telemarketing solicitations.

29.     Yodel uses an automated dialer to call consumers and market South University's for-profit educational services.

30.     The dialer detects whether a potential customer answered the call and, if so, transfers the call to a soundboard agent who plays a prerecorded message.

31.     If the consumer engages with the call and responds to the prompts, the Yodel agent then transfers the call to South University's so-called "student support line," where a sales agent recruits the consumer to enroll in any number of South University's for-profit educational offerings.

32.     Plaintiff's cellular telephone number XXX-XXX-5899 has been listed on the DNC Registry since 2009.

---

[5] South University, *Job Search*, https://us60.dayforcehcm.com/CandidatePortal/en-US/southu/ (last visited Sept. 2, 2021).
[6] South University, *Admissions Representative*, https://us60.dayforcehcm.com/CandidatePortal/en-US/southu/Posting/View/5551 (last visited Sept. 2, 2021).

33.     Plaintiff has no business relationship with Defendants, he has never expressed interest in attending South University, and he has never provided consent to receive calls from Yodel Technologies or from or on behalf of South University.

34.     In early 2020, Plaintiff started receiving calls that played a prerecorded message from "Tanner" inquiring whether he was interested in going back to school. When Plaintiff would get through to a live person, he would ask to speak with the caller's manager, at which point the calls were consistently disconnected.  Plaintiff then started keeping track of these calls.

35.     On or about June 2, 2020, Defendants made an autodialed call to Plaintiff's cellular telephone line XXX-XXX-5899 from a caller ID number 215-583-0747.

36.     The call rang to Plaintiff's cell phone and – after a pause of dead air followed by an audible "click" (the telltale sign of Defendants' use of an autodialer) – Plaintiff again heard a prerecorded message from "Tanner," asking Plaintiff whether he wanted to go back to school. Plaintiff stated he was not interested and hung up.

37.     On or about June 5, 2020, Defendants made a second autodialed call to Plaintiff's cellular telephone line from caller ID number 267-245-7563. Again, he heard a pause and an audible "click" followed by the same prerecorded message from "Tanner," asking whether he wanted to go back to school. Plaintiff stated he was not interested and hung up.

38.     Nevertheless, on or about June 9, 2020, in complete disregard of Plaintiff's request, Defendants made a third autodialed and prerecorded call from caller ID number 267-478-8562 to Plaintiff's cellular telephone. It had the same characteristics of the previous calls and played the same prerecorded message. Again, Plaintiff stated he was not interested and hung up.

39.     Yet, Defendants ignored Plaintiff's request. On or about July 30, 2020, Defendants made a fourth autodialed and prerecorded call to Plaintiffs cellular telephone from caller ID number 215-461-8260. It had the same characteristics of the previous calls and played the same prerecorded message.

40.     This time, to determine who was behind these calls he was receiving, Plaintiff played along and was transferred to a representative named "Dennis."

41.     Dennis then transferred Plaintiff to "Lateresa Blackwell," a representative of South University on a "student support line." As Plaintiff tried to gather information from Ms. Blackwell to determine the genesis of the calls and why Defendants kept calling him, the representative suddenly stated she could not hear him and hung up.

42.     Plaintiff never consented verbally or in writing to the Defendants contacting him on his cellular phone, let alone via autodialed and prerecorded calls.

43.     That did not stop Defendants from calling Plaintiff's cell phone with prerecorded messages.

44.     Defendants are aware that the pre-recorded calls are prohibited by the TCPA without the recipient's prior express consent. But they placed the calls anyway, even without the recipient's prior consent. In so doing, the Defendants not only invaded the personal privacy of Plaintiff and members of the classes, but also intentionally and repeatedly violated the TCPA.

45.     Defendants or their agents used a computerized system to make these calls, as only a computerized system will allow Defendants or their agents to send prerecorded messages like those Plaintiff and members of the classes received.

46.     The following additional further facts support these allegations. These calls were patently unlawful and recklessly automated by scofflaws rather than automated by companies

CLASS ACTION COMPLAINT

with business relationships with the call recipients. The calls were random. Plaintiff had no relationship with any of the callers or Defendants and performed no act that would have triggered a computerized dialing system to call him, which evidences the callers randomly obtained his number or purchased it from a list.

47.    Here, the Defendants violated the TCPA en masse. Plaintiff is just one of the thousands who has received illegal, prerecorded robocalls from Defendants without ever giving prior express consent to receive such calls. He is also one of the many who registered his telephone number on the National Do Not Call Registry and still received multiple calls from Defendants within a twelve-month period. These are hallmark violations of the TCPA.

**South University is vicariously liable for any calls made by Yodel Technologies**

48.    South University requires its admissions representatives to "conduct a high quantity of prospect phone contacts to secure appointments and interview activity, and conduct follow-up activity with unresolved interviewees and future class applicants."

49.    South University markets and distributes its for-profit education services through a network of lead generators. Yodel Technologies is one of these lead generators.

50.    South University allows its lead generators to hold themselves out as South University and pays its lead generators for providing leads and connecting prospective students with the "student support line."

51.    South University exerts substantial control over the manner and means of their lead generators' telemarketing, including among other things, providing calling lists, directing the content of the lead generators' advertising, and writing and approving the scripts used to make telemarketing calls.

52. On information and belief, South University also allow their lead generators to access proprietary internal computer systems for the purpose of selling South University's educational services and connecting consumers with representatives of South University.

53. South University was or should have been aware that its lead generators were violating the TCPA but acquiesced to its agents' conduct by consenting or failing to object to those illegal acts.

54. South University has known that its lead generators have resorted to illegal telemarketing. The United States government sent its lead generator, Yodel Technologies, a cease-and-desist letter for illegal telemarketing during the relevant period and same time Plaintiff received the calls at issue.

**Class Action Allegations**

55. Plaintiff brings this action under Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) as a representative of the following Classes:

Class One (the "Prerecord Class") (Count One):

All persons within the United States who, within the four years prior to the filing of this action, (1) received a phone call from or on behalf of Defendants, (2) to their cellular telephone line, (3) using an artificial or prerecorded voice, (4) without prior express consent or after revoking consent.

Class Two (the "DNC Class") (Count Two):

All persons within the United States who, within the four years prior to the filing of this action, (1) whose telephone numbers were listed on the National Do Not Call Registry, and (2) who received more than one telemarketing call within any twelve-month period at any time from Defendants, (3) to promote Defendants' products and services.

56.     Excluded from the Classes are Defendants, any entities in which Defendants have a controlling interest, Defendants' agents and employees, any Judge to whom this action is assigned, and any member of such Judge's staff and immediate family.

57.     The proposed class members are identifiable through phone records and phone number databases that will be obtained through discovery.

58.     Plaintiff and members of the proposed Classes were harmed by the Defendants' acts in at least the following ways: Defendants illegally contacted Plaintiff and the members of the Classes who were registered on the National Do-Not-Call Registry, invading the privacy of the Plaintiff and class members and subjecting them to annoying and harassing nuisance prerecorded calls.

59.     Plaintiff is a member of both Classes.

60.     Plaintiff reserves the right to amend the definition of the Classes if discovery or further investigation reveals that any of the Classes should be expanded or otherwise modified.

61.     *Ascertainability*: Names and addresses of members of the Classes are available from Defendants' records. Notice can be provided to the members of the Classes through direct mailing, publication, or otherwise using techniques and a form of notice similar to those customarily used in consumer class actions arising under the TCPA.

62.     *Commonality*: There are questions of law and fact common to all class members, including:

        a.     Whether the calls were placed without obtaining the recipients' valid prior express written consent;

        b.     Whether the calls were placed after Plaintiff and members of the Classes registered their numbers on the National Do-Not-Call Registry and, after

having done so, whether Plaintiff and members of the DNC Class received
more than one call within a twelve-month period;

c.      Whether the calls played a prerecorded message;

d.      Whether Defendants' conduct was negligent, willful, or knowing;

e.      Whether Plaintiff and the class members are entitled to statutory damages
because of Defendants' actions and the amount of such damages;

f.      Whether Defendants should be enjoined from engaging in such conduct in
the future; and

g.      Whether an agency relationship exists between Defendants.

63.     ***Numerosity***: The exact number of class members is unknown to Plaintiff at this
time and can only be determined through discovery. However, given the capabilities of the
telephone systems used to place and process autodialed and prerecorded message calls, the
number of members of each class likely is in the hundreds or thousands. Therefore, each class is
sufficiently numerous such that individual joinder of all members is impracticable.

64.     ***Typicality:*** Plaintiff's claims are based on the same facts and legal theories and
are, therefore, typical of the claims of the other class members which he seeks to represent under
Federal Rule of Civil Procedure 23(a)(3). Plaintiff and each member of the Prerecord Class
received calls on their cellular telephone lines from Defendants using a prerecorded message
without their prior express consent. Likewise, Plaintiff and each member of the DNC Class
received more than one telemarketing call within a twelve-month period on telephone numbers
listed on the DNC Registry. There are no defenses that Defendants may have that are unique to
Plaintiff. Plaintiff has fulfilled all conditions precedent to bring this lawsuit.

65.     *Adequacy*: Plaintiff will fairly and adequately represent and protect the interests of the members of the Classes as required by Federal Rule of Civil Procedure Rule 23(a)(4). Plaintiff is an adequate representative of the Classes because his interests do not conflict, but instead align, with the interests of the members of the Classes, and Plaintiff is represented by counsel skilled and experienced in class actions, including TCPA class actions.

66.     *Superiority:* A class action is superior to all other available methods of the fair and efficient adjudication of the claims asserted in this action under Federal Rule of Civil Procedure 23(b)(3) because:

   a.     The expense and burden of individual litigation makes it economically unfeasible for members of the Classes to seek to redress their claims other than through the procedure of a class action;

   b.     If separate actions were brought by individual members of the Classes, the resulting duplicity of lawsuits would be inefficient and could lead to varying and inconsistent adjudications; and

   c.     Absent a class action, Defendants are likely to continue violating the TCPA based on the allegations complained of herein, including particularly defendant Yodel's alleged history as a serial TCPA violator.

67.     *Predominance:* Common questions of law and fact predominate over any questions affecting individual class members, also as alleged above.

## Claims for Relief

### Count One:
### Violation of the TCPA's provisions prohibiting
### prerecorded calls to cellular telephone lines

68.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

69.     Defendants violated the TCPA, either directly or through the actions of others, by initiating a telephone call to Plaintiff's and class members' cellular telephone lines using an artificial or prerecorded voice without prior express consent, all as alleged more fully above. *See* 47 U.S.C. § 227(b)(A).

70.     Defendants' violations were willful and/or knowing, also as alleged more fully above.

### Count Two:
### Violations of the TCPA's Do Not Call provisions

71.     Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

72.     Defendants violated the TCPA, either directly or through the actions of others, by placing phone calls to the Plaintiff's cellular telephone line after Plaintiff registered on the National Do Not Call Registry, and Defendant did so for the purpose of marketing products and/or services to Plaintiff and also did so to members of the proposed Classes, in violation of 47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(c)(2).

73.     Defendants' violations were willful and/or knowing, as alleged more fully above.

74.     As to both counts, Defendants' acts and omissions constitute numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq.*, and its implementing provisions.

75.     As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, and accompanying regulations, Plaintiff and each member of the proposed Classes are entitled to damages for each and every violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

76.     Plaintiff and members of the proposed Classes are also entitled to, and do, seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

**Prayer for Relief**

Plaintiff, individually and on behalf of all others similarly situated, respectfully requests the following relief:

A.     That the Court certify the proposed Classes as requested;

B.     That the Court appoint Plaintiff as representative for the Classes;

C.     That the Court appoint the undersigned as counsel for the Classes;

D.     That the Court enter a judgment permanently enjoining Defendants from engaging in, or relying upon, telemarketing that violates the TCPA;

E.     That the Court enter a judgment requiring Defendants to adopt measures to ensure TCPA compliance;

F.     That the Court enter a judgment awarding any other injunctive relief necessary to ensure the Defendants' compliance with the TCPA;

G.     That the Court enter a judgment awarding Plaintiff and all class members statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each knowing or willful violation;

H.     That the Court award pre- and post-judgment interest on all amounts awarded to Plaintiff and members of the Classes;

I.      That the Court enter an order awarding Plaintiff's counsel their reasonable attorneys' fees and costs; and

J.      That Plaintiff and all members of the Classes be granted any other relief that the Court deems just and equitable under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated:  September 3, 2021                    Respectfully submitted,

**BAILEY & GLASSER LLP**

/s/ Lawrence J. Lederer
Lawrence J. Lederer (Pa. ID 50445)
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
T: 202.463.2101
F: 202.463.2103
llederer@baileyglasser.com

John W. Barrett
(*pro hac vice* admission to be requested)
209 Capitol Street
Charleston, West Virginia 25301
T: 304.345.6555
F: 304.342.1110
jbarrett@baileyglasser.com

Benjamin J. Hogan
(*pro hac vice* admission to be requested)
6 Canyon Road, Suite 200
Morgantown, West Virginia 26508
T: 304.594.0087
F: 304.594.9709
bhogan@baileyglasser.com

**HEIDARPOUR LAW FIRM, PLLC**
Andrew W. Heidarpour
(*pro hac vice* admission to be requested)
1300 Pennsylvania Ave. NW, 190-318
Washington, DC  20004
T: 202.234-2727
AHeidarpour@HLFirm.com