**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Ryan Lacon, individually and on behalf of all others similarly situated, | Case No. 2:21-cv-03957-JDW |
| Plaintiff, | |
| v. | |
| Education Principle Foundation d/b/a South University - Member, LLC d/b/a South University Savannah, LLC and Yodel Technologies, LLC, | |
| Defendants. | |

**JOINT STIPULATION SETTING PROTOCOL FOR DISCOVERY OF
ELECTRONICALLY STORED INFORMATION**

Plaintiff Ryan Lacon and Defendants Education Principle Foundation, South University – Member, LLC, South University Savannah, LLC and Yodel Technologies, LLC (collectively, the "Parties") have stipulated and agreed to this Joint Stipulation Setting Protocol for Discovery of Electronically Stored Information (the "Protocol").

**A.      General Terms**

**1.   Intent and Scope of Protocol**

The procedures set forth in this Protocol shall govern the Parties' production of "documents" and "electronically stored information" (as those terms are used in the Federal Rules of Civil Procedure, including Rule 34(a), that are stored in electronic format ("ESI")).  If any provisions of this Protocol conflict with the Parties' actual or potential obligations to produce ESI under applicable rules, this Protocol shall be controlling. To the extent that the Parties have

1

additional obligations or rights not addressed in this Protocol, the applicable rule or order of the Court shall be controlling.  Nothing in this Order is intended to broaden the scope of any Party's obligations under the Federal Rules of Civil Procedure, any order of the Court, or applicable case law. The Parties acknowledge that, as with all other discovery, ESI is governed by a proportionality standard in order that discovery obligations are consistent with the just, speedy and inexpensive determination and resolution of litigation disputes. Fed. R. Civ. P. 26(b)(1), (b)(2)(B).

### 2.  Reservation of Rights

All Parties reserve all rights under the Federal Rules of Civil Procedure for matters relating to the production of documents that are not specifically addressed in this Protocol.

## B.   Review and Collection of Potentially Relevant ESI

### 1.  Date Range for Document Collection, Review, and Production

The date range from which ESI is to be collected and reviewed for potentially responsive documents under this Protocol shall be determined in reference to the applicable discovery requests, unless otherwise agreed to by the Parties.  The Parties shall confer in an attempt to promptly resolve any disputes over the appropriate date range and, in the event of any such disputes, the date range under this Protocol shall be the period agreed to by the Parties or as ordered by the Court.  The Parties' ESI production is subject to obligations under the applicable Federal Rules of Civil Procedure regarding the requirement to supplement responses.

### 2.  Procedure for Collecting and Searching ESI

The Parties agree to develop a search term methodology in accordance with the specifications set out in **Exhibit A**. To the extent that revisions are needed or that a particular search is outside of the specifications outlined in Exhibit A, the Parties agree to meet and confer in good faith concerning whether and to what extent revisions are necessary for ESI collection and

80356366.1

searching in this matter .  The Parties agree that: (1) they will use their best efforts to identify and disclose custodians likely to possess potentially relevant information; (2) documents are not relevant or responsive simply because they hit on one or more search terms; and (3) nothing in this Protocol is intended to waive any Party's objections to any discovery request or otherwise indicate that any Party agrees that any discovery request is valid or appropriate. In the event that a revision to Exhibit A is proposed, and the Parties cannot reach an agreement regarding the proposed revisions, the Parties shall submit the dispute to the Court for resolution.

### 3.      Known Responsive Material

The Parties understand that known responsive material must be Produced. ESI that is known to the Parties' Counsel to be non-privileged and responsive to a discovery request shall be produced without regard to whether it was responsive to a search term, or otherwise flagged as potentially responsive by another search technique, unless Counsel specifically identifies the documents as being withheld pursuant to a specific objection or Privilege.

### 4.   Discrete Document Collections.

Those portions of Parties' documents that represent discrete document collections, such as substantially relevant folders of ESI specifically segregated by Defendants, Defendants' employees, or Plaintiffs, before or after the commencement of this litigation, that are substantially relevant to the claims and defenses in this proceeding, shall be reviewed for responsiveness (subject to appropriate claims of privilege) without regard to whether a given document in the collection is responsive to a search term, or otherwise flagged as potentially responsive by another search technique.

80356366.1

### 5.  Unsearchable Documents.

Documents that are reasonably believed to be responsive and for which text-based search technologies are fundamentally ineffective, such as images, spreadsheets, etc., must be reviewed without culling by search terms, predictive coding, or other technologies that rely primarily on text.

### 6.  Privilege

The Parties understand that in performing any search and review of ESI or other documents they may identify potentially privileged information either during their manual review or for targeted keyword searches designed to identify privileged information contained within the ESI. To the extent any Party identifies such information, that Party shall use reasonable best efforts to review such information to determine whether it qualifies as privileged information under applicable law.  If documents are withheld on the basis of privilege, the withholding Party shall produce a privilege log within fifteen (15)days of the document production from which the documents were withheld.  Privilege logs shall identify the date of the communication, type of document, senders (or party in possession of the document), cc recipients, bcc recipients, the subject line (if not privileged), a general description of the privilege asserted, and any internal reference (i.e., Bates or document identification) number assigned to the purportedly privileged document(s).  The Parties have an ongoing obligation to supplement their privilege log(s) should they become aware of any additional responsive, privileged documents.  The Parties agree that they are not required to log attorney-client or work product privileged communications relating to the subject matter of this case that occurred after the date this case was filed.  In an effort to ensure this matter proceeds efficiently, the Parties also agree to meet and confer regarding other potential limitations on logging privileged communications.

80356366.1

### 7. Back-Up Storage and Devices

The Parties are not required under this Protocol to search and collect ESI from back-up media or storage devices, including any tape-based back-up systems or disaster recovery systems. The Parties, however, have an obligation to take reasonable steps to preserve all potentially relevant information during the term of the litigation. If any Party later determines that the production of back-up media is relevant and necessary, and such ESI is not obtainable from a different less-intrusive method, it shall notify the Parties immediately and the Parties will agree to confer regarding the request and, if an agreement cannot be reached, raise the issue with the Court.

### 8. Metadata Preservation

Where applicable, the Parties shall preserve all available metadata fields for all ESI collected and searched pursuant to this Protocol.

## C. Document Production Procedures

### 1. Production Specifications

The Parties agree to produce documents and ESI in accordance with the specifications set out in **Exhibit B**. Bates numbers for documents produced by the Parties shall be in the format "[AbbreviatedPartyName]000001"). Each production shall be produced via a SendThisFile link (or equivalent file share link), or produced via a FTP/SFTP site and shall be labeled with the case caption, the date the production is being made, and the Bates Range of the production. In the event that a receiving Party determines that a produced document is not functionally equivalent to the ESI as it was originally intended to be used in the normal course of business, the receiving Party shall notify the Producing Party and request that said document(s) be produced in its native format, and such requests should be granted to the extent it is not unduly burdensome and is proportional to the needs of this case.

80356366.1

### 2.  Metadata Production

All produced documents shall include, at a minimum, the metadata for all fields set out in Exhibit B to this Protocol to the extent that metadata is applicable and available, and to the extent it is not unduly burdensome to do so.

### 3.  Attached Documents

If a non-privileged, responsive document is attached to another file or document (such as an icon indicating an email attachment or metadata indicating a family relationship between documents) then, to the extent technologically feasible, the producing Party shall produce all attached files immediately following the parent document in sequential order, as described in Exhibit B.  This does not require the producing Party to produce privileged data or otherwise waive the producing Party's right to assert a privilege with respect to any file or document, or attached documents or files.  If a receiving Party determines that an attachment or otherwise referenced document is not included, it shall notify the Producing Party and the producing Party shall either produce the attached document or provide an explanation of why such document was not attached.

### 4.  E-mails and Attachments

If any attachment to an e-mail is not privileged and responsive to a Party's document request, the parent e-mail shall be deemed responsive (if not privileged) to that request. Non-responsive materials located within responsive documents, and non-responsive attachments to responsive parents, will be produced unless otherwise privileged.

### 5.  Deduplication.

The Parties shall make reasonable efforts to de-duplicate ESI. ESI produced by the Parties shall be globally de-duplicated across all collected custodial and non-custodial sources.

Documents are considered exact duplicates if a document family or stand-alone file has a matching MD5 or SHA-1 hash value as compared against the same document type (i.e., family or stand-alone file). Hash values of emails will be calculated on the concatenated values of at least the following fields: From, To, CC, BCC, Subject, Date Sent, Time Sent, Attachment Names, Body, and the hash values of all attachments. The names of all custodians and non-custodial sources who were in possession of a document prior to deduplication will be populated in the DUPLICATE CUSTODIANS metadata field. The original file paths of a document. prior to deduplication will be populated in the DUPLICATE FILE PATHS metadata field.

### 6.   Preservation of Original Documents

The Parties shall take reasonable measures to preserve a copy of all ESI collected, reviewed, and/or produced in this Litigation including a copy of all metadata for such documents, until the Litigation is complete.  The Parties understand that (a) producing ESI may effect some changes in corresponding metadata; and that (b) such metadata changes resulting from production are permissible.

### 7.   Claims of Confidentiality

Once all Parties enter into a Protective Order, the Parties may "burn" (electronically, or, where appropriate for non-PDF files, through other appropriate means) the appropriate confidentiality designation (either "Confidential" or "Highly Confidential – Attorneys' Eyes Only") on each page of any document produced under this Protocol that the producing Party believes contains Confidential Information under the Protective Order.  Any inadvertent failure to comply with this procedure shall not waive any protection or confidential treatment so long as the Producing Party takes reasonable steps to assert the confidentiality upon discovery of the

7

inadvertent omission of the confidentiality designation. The notation of a confidential designation will be logged in the CONFIDENTIALTIY metadata field.

### 8. Redactions

If a producing Party redacts information from a page, the Party shall electronically "burn" the word "Redacted" onto the page at or reasonably near to the location of the redaction(s).  If a document contains redactions, the producing Party may withhold from the redacted document Load File only the metadata directly associated with the redactions, and shall identify all such redactions on the privilege log and further indicate the nature of the privilege asserted.  Excel and Spreadsheet Files will be produced in Native Format with redactions in place using a native file redaction tool. Any redactions (e.g., privacy, privilege, confidentiality, per agreement of the parties) shall be clearly indicated on the face of the document, with each redacted portion of the document stating that it has been redacted and the basis for the redaction, and the REDACTION metadata field shall indicate that the document contains redactions and the basis for the redaction (e.g., "A/C Privilege"). Where a responsive and non-privileged document contains both redacted and non-redacted content, Defendants shall produce the remainder of the non-redacted portions of the document and the text/OCR corresponding to the non-redacted portions. Documents shall not be redacted as non-responsive.

### 9. Authenticity

The Parties reserve all rights regarding their ability to object to the authenticity of documents produced under this Protocol.

### 10. Quality Control Measures

If a Party becomes aware of any potential defect or delay with any of the procedures described herein, that Party shall promptly advise the other Parties as soon as possible so that the

Parties can confer in an attempt to address the problem.  To the extent replacement data is required, the Producing Party shall promptly produce it.  Effective quality control measures will be instituted by all Parties to ensure compliance with each Party's obligations under this Protocol.

**D.  Terms and Conditions**

**1.  Cooperation**

The Parties shall, as necessary, confer to exchange information regarding issues associated with any production of ESI.

**2.  Modification**

Any practice or procedure set forth herein may be varied by written agreement of the Parties or by Order of the Court.

**3.  Dispute Procedures**

The Parties shall confer to resolve any procedures or disputes that arise under this Protocol. If any Party objects to any action(s) taken by another Party, the objecting Party shall state the specific objection in a written communication to counsel for such other Party.  The Parties will meet and confer by phone or video conference regarding the objection.  If a dispute cannot be resolved by the Parties, it shall be presented to the Court for resolution.

**4.  Objections to Admissibility Preserved**

Nothing in this Protocol shall be construed to affect in any way the rights of any Party to object to the admissibility of any document or information (including any ESI produced pursuant to this Protocol) at any stage during this litigation.

**5.  No Waiver of Privilege – Inadvertent Production**

The inadvertent disclosure or production of any information or document that is subject to an objection on the basis of attorney-client privilege, work-product protection, or other privilege,

9

including, but not limited to, information or documents that may be considered Confidential Information or Highly Confidential Information under the Protective Order, will not be deemed to waive a party's claim to its privileged or protected nature or estop that party or the privilege holder from designating the information or document as privileged or subject to the work product doctrine at a later date.  Any party receiving any such information or document must notify as soon as reasonably possible the Producing Party upon discovering the privileged nature of the document(s) that were produced. Upon receipt of this communication, the Producing Party can assert a privilege over the inadvertently produced document(s) within fourteen (14) business days. If the Producing Party asserts a privilege over any inadvertently produced document(s)—either affirmatively or in response to a Receiving Party's notice—then the Receiving Party must either return the information or documents to the producing party within five (5) business days and permanently destroy all copies of the document(s) or assert a challenge to the underlying claim of privilege, in which case it may sequester the challenged documents and use them only for purposes of promptly raising such challenge with the Court (for the avoidance of doubt, inadvertent production itself is not a basis to assert waiver of privilege).  The provisions of this section constitute an order pursuant to Rules 502(d) and (e) of the Federal Rules of Evidence.

### 6.  Deviation from Format Requirements Related to Undue Burden or Cost

If production of ESI and/or hard copy documents in the formats described above is deemed by the producing Party to be not feasible because of undue cost or burden, then the producing Party shall meet and confer with the requesting Party regarding the options for production of such ESI and/or hard copy documents.  If agreement cannot be reached, then the matter may be presented to the Court for resolution.

80356366.1

**IT IS SO ORDERED.**

Dated:   December 23, 2021

/s/ Joshua D. Wolson
Hon. Joshua D. Wolson
United States District Judge

11

**EXHIBIT A**

**(Search Term Procedure)**

80356366.1

**Exhibit A**

**SEARCH TERMS FOR COLLECTING ELECTRONIC DOCUMENTS**

**A. Initial Search Methodology:** The Parties will cooperate in good faith regarding the disclosure and formulation of appropriate search terms and protocols in advance of any search to cull Document Custodians' ESI. With the objective of limiting the scope of review and production, and thereby reducing discovery burdens, the parties shall meet and confer on the following topics by the date indicated:

 **1. Within 7 days of service of the Court's approval of this stipulation:** Defendant will complete all loading and processing of custodial ESI for their Document Custodians. Defendant will disclose to Plaintiffs the search software (including version number) they plan to use to run search terms.

 **2. Within 14 days of the Court's approval of this stipulation:** Defendant shall make a pre-search-commencement disclosure of all search terms, including semantic synonyms. Semantic synonyms shall mean without limitation code words, terms, phrases or illustrations, acronyms, abbreviations, or non-language alphanumeric associational references to relevant ESI, or information that may lead to relevant ESI.

 **3. Within 7 days of Defendant's disclosure under section 2 of Exhibit A:** Plaintiffs shall provide any revisions or additions to the responding party's proposed search terms.

 **4. Within 7 days of Plaintiff's response under Section 3 of Exhibit A:** Defendant will (a) identify which of Plaintiffs' proposed search terms Defendant will agree to use (if not all) and (b) provide a Hit Count Report as provided below.

 **5. Within 7 days of Plaintiff's receipt of the Hit Count Report in Section 4 of Exhibit A:** The parties will meet and confer regarding the Hit Count Reports for any disputed search terms.

 **6. Within 10 days of the meet and confer in Section 5 of Exhibit A:** The parties will either (1) resolve their differences on any disputed initial search terms or (2) bring the matter to the Court.

**B. Addition of Search Terms After Initial Search Term Negotiation:** If after the completion of the initial search methodology process outlined above, Plaintiffs determine that any search terms should be added to the initial search term list, then Plaintiffs shall advise Defendant in writing of the proposed additional search term(s). Within 7 days of Plaintiffs' request for additional search terms, Defendant shall either agree to use the additional search term(s) or provide a Hit Count Report for the additional search term(s). Within 21 days of Plaintiffs' request for additional search terms, the parties shall either (a) agree to run the search terms (or a revised additional search term agreed to by both parties) or (b) bring the matter to the Court.

**D. Hit Count Report:** A hit count report must be provided in MS Excel (or other format as agreed to by both parties). A hit count report must include the following information: (a) overall number of documents being searched, (b) number of documents hit by the search term with separate hits for individual documents hit vs. documents hit including families, and (c) unique documents hit by each search string (i.e., documents that would not be included in the search results but for the inclusion of that particular search term). For any Boolean search strings (e.g., XYZ /10 ABC or DEF), the Hit Count Report will provide information both for the search string as a whole as well as each individual component of the Boolean search string.

**E. Non-Custodial ESI:** The parties will meet and confer regarding the appropriateness of using search terms for culling centralized data sources (i.e., non-Document Custodian ESI), including, for example, determining whether production of particular network folders without the use of search terms is more appropriate than culling such documents with search terms.

**F. Validation:** The parties will meet and confer regarding appropriate methods to validate the recall of Defendant's search methodology for Custodial ESI.

80356366.1

**EXHIBIT B**

## EXHIBIT B

A.     Production Specifications for ESI

1.   ESI should be produced as Group IV, 300 DPI, single-page TIFF images.  File names cannot contain spaces.  All black/white images must be in 1-bit TIF images and color documents must be in 24-bit JPG files.

Documents that cannot be converted to TIFF or are to be produced in Native File Type, are as follows: Electronic spreadsheets (e.g., Excel), electronic presentations (e.g., PowerPoint), desktop databases (e.g., Access), documents (e.g., Microsoft Word), and audio (ex. mp3 or .wav), video, and other multimedia files that have been identified as relevant and responsive shall be produced in native format. To the extent that the collection of a native format would result in the production of a proprietary file type, the parties will meet and confer prior to the production of such proprietary file types. The parties further agree that existing PDFs shall be produced in their current format. If particular documents warrant a different format from those previously identified, the parties will meet and confer over a mutually acceptable format for production of those documents. Prior to processing non-standard native files for production, the producing party shall disclose the file type to, and meet and confer with, the receiving party on a reasonably usable production format.

For documents produced natively, create a single page place holder sheet bearing the beginning Bates number, the file name, and the file type of the document being produced.

Hidden text. ESI items shall be processed, to the extent practicable, in a manner that preserves hidden columns or rows, hidden text or worksheets, speaker notes, tracked changes and comments. Any responsive documents with comments or tracked changes will be produced with the comments and tracked changes enabled.

Microsoft "Auto" Feature and Macros. Documents such as Microsoft Excel (.xls and .xlsx), Microsoft Word, (.doc and .docx) and Microsoft PowerPoint (.ppt and .pptx) documents should be analyzed for the "auto" features, where documents have an automatically updated date and time in the document, file names, file paths, or similar information that when processed would be inaccurate for how the document was used in the ordinary course of business. If "auto date," "auto file name," "auto file path," or similar features are identified, the produced document shall be branded with the words "Auto Date," "Auto File Name," "Auto File Path" or similar words that describe the "auto" feature, and the metadata field "AutoMacro" should be marked as "Auto." Similarly, if a document contains a "macro," the document shall be branded with the word "Macro," and the metadata field "AutoMacro" should be marked as "Macro."

Production of Structured Data. The parties agree to meet and confer to the extent that there is data in database files, including personal database files (e.g., MS Access) or database application files, such as MS Access, SQL, and SAP, to determine the best reasonable form

of production of usable data. To the extent a response to discovery requires production of discoverable electronic information contained in a database, in lieu of producing the database, the parties shall meet and confer to, with an understanding of which fields are relevant, agree upon a set of queries to be made for discoverable information and generate a report in a reasonably usable and exportable electronic file (e.g., Excel or CSV format) for review by the requesting party or counsel. Upon review of the report(s), the requesting party may make reasonable requests for additional information to explain the database schema, codes, abbreviations, and different report formats or to request specific data from identified fields.

The Parties reserve the right to request native files for any produced document.

2. An Opticon load file (OPT) must be provided.  The Opticon load file is a page level load file, with each line representing one image.  Below is a sample:

IMG00001,VOL01,D:\IMAGES\001\IMG00001.TIF,Y,,,3
IMG00002,VOL01,D:\IMAGES\001\IMG00002.TIF,,,,
IMG00003,VOL01,D:\IMAGES\001\IMG00003.TIF,,,,
IMG00004,VOL01,D:\IMAGES\001\IMG00004.TIF,Y,,,2
IMG00005,VOL01,D:\IMAGES\001\IMG00005.TIF,,,,

The fields are, from left to right:
- Field One - (IMG00001) - The page identifier
- Field Two - (VOL01) - The volume identifier - not required
- Field Three - (D:\IMAGES\001\IMG00001.TIF) - a path to the image to be loaded
- Field Four - (Y) - Document marker - a "Y" indicates the start of a unique document.
- Field Five - (blank) - Can be used to indicate box
- Field Six - (blank) - Can be used to indicate folder
- Field Seven - (3) - Often used to store page count but not required

3. Extracted text of a document must be delivered on a document level.  All text for a single document should be contained within one file.  The name of the file should be the beginning Bates number of the document (BEGDOC.txt).  If there are non-searchable electronic documents and the text cannot be extracted, the Parties agree to provide OCR text for those documents.

4. A Concordance\Relativity load file must be delivered with the requested fields and metadata as shown in the table below.  If specific fields cannot be provided for a particular document, the field should be left blank.  In the case of email, the email image will be the parent, and attachment(s) will be the child/children; email images/parents and attachments/children must be Bates numbered consecutively and sorted by email image/parent followed by attachment/child.

The delimiters for the file must be as follows (Concordance default):

2

Comma — ASCII character 20 (¶)
Quote — ASCII character 254 (þ)
Newline — ASCII character 174 (®)

| Field Name | Sample Data | Comment |
|---|---|---|
| PRODBEG | ABC0000001 | First bates number of electronic document |
| PRODEND | ABC0000002 | Last bates number of electronic document |
| PRODBEGATT | ABC0000001 | First bates number of the first page in a parent/child email relationship |
| PRODENDATT | ABC0000010 | Last bates number of the last page in a parent/child email relationship |
| CUSTODIAN | John Doe | Owner of the email/document |
| DEDUPED CUSTODIANS | Jane Doe Smith | Alternate owners of the email/document |
| FROM | John Doe | Sender of email |
| TO | Jane Doe Smith | Direct or Primary Recipient(s) of email (listed in To field |
| CC | Fred Murray | Secondary Recipient(s) of email (listed in CC field) |
| BCC | Jake Johnson | Blind Recipient(s) of email (listed in BCC field) |
| SUBJECT | This is a document | Subject line of email |
| DATE _SENT | 10/15/2007 | Date email was sent (MMDDYYYY) |
| TIME  SENT | 9:00 AM | Time email was sent |
| LINK | \NativeFiles\test.xls | Link to native file on the media received |
| FILE _EXTEN | PST (email); DOC (Word) | File extension of the email, attachment, or loose e-file |
| FILE_NAME | Document.doc, jdoe.pst | The file name of the email attachment or loose e-file |
| AUTHOR | John Doe | The author of the email attachment or loose e-file |
| DATE_MODIFIED | 10/15/2007 | The modified date of the email attachment or loose e-file |
| DATE_ACCESSED | 10/17/2005 | The last accessed date of the email attachment or loose e-file |
| PRINTED_DATE | 10/15/2006 | The date the document was last printed |

| | | |
|---|---|---|
| ORIGINALFILEPATH | Smith.pst\Personal Folders\Inbox | The path to the email in the mailbox or loose e-file |
| DEDUPED FILEPATH | Smith.pst\Personal Folders\Inbox | The alternate path to the email in the mailbox or loose e-file |
| FILESIZE | 125 | Size of file in KB |
| MD5HASH | 7E8D6F38A8BB6FD50279B274E2E1140 6 | MD5 Hash value of the file |
| PR_CONV_IDX | 1235489623896544548521 | Conversation Index Used for email threading |
| THREAD INDEX | 1235489623896544548521 | Message header identifier, distinct from "PR_Conversation_Index ", that permits threading of email chains in review software. |
| CONFIDENTIALITY | Confidential | Confidentiality Designation for produced documents |
| FLAGS | | The notation to indicate that a flag was applied to a specific email |
| IMPORTANCE | ! | The notation to indicate that an importance level (ex. the exclamation mark in Outlook) was applied to a specific email |
| REDACTED | "X," "Y," "Yes," and "True" | Indicators that the document is redacted |
| REDACTION REASON | Attorney-Client Privilege | Explanation for Redaction. Text |
| WITHHELD PLACEHOLDER | "X," "Y," "Yes," and "True" | To the extent a document is fully withheld (on the basis of privilege or otherwise), this field must be populated with a "Y." |

| PRIVILEGE ASSERTED | "Withheld – Attorney-Client Privilege" | To the extent a document has been withheld on the basis of privilege or redacted on the basis of privilege, the text pertaining to such assertion of privilege shall be included as a metadata field (e.g. "Withheld - Attorney Client Privileged"). |
|---|---|---|

5. The Parties agree to delivery of production sets as set out in the above Protocol. If a production set is delivered on a hard drive, the receiving Party must, upon request, return that hard drive to the producing Party at the conclusion of the litigation.

B.   Production Specifications For Hard Copy Documents

1.   Scanning of Hard Copy Documents

a.   Paper records will be scanned or otherwise converted into electronic form from paper documents in the following format:

b.   All documents shall be scanned to single page Group 4, TIFF format, at least 300 dpi and 8 ½ x 11-inch page size, except for documents requiring higher resolution or different page size.

c.   Productions of the images shall be made using an image load file (.OPT or. LFP) and a delimited database/metadata load file (.DAT). Each image file should have a unique file name which shall be the Bates number of the page.

d.   In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized). The Defendants will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

e.   Relationship: The relationship among the documents in a folder or other grouping should be reflected in the coding of the beginning and ending document and attachment fields.

f.   Identification: Where a document, or a group – such as a folder, clipped bundle, or binder – has an identification spine or other label, the information on the label shall be scanned and produced as a first page of the document or grouping.

2. Image files must be produced in Group IV, 300 DPI, single-page TIFF format. File names cannot contain spaces. The TIFF files should be grouped into folders of no more than 1000 TIFF files; there should not be a separate folder created for each document.

3.  A database load file (delimited text) must be produced with, at a minimum, the BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and Custodian/Source. The delimiters for the file must be as follows (Concordance default):

> Comma — ASCII character 20 (¶)
> Quote — ASCII character 254 (þ)
> Newline — ASCII character 174 (®)

4.  OCR text must be delivered with all hard copy documents scanned into electronic form. All text for a single document should be contained within one file. The name of the file should be the beginning bates number of the document (BEGDOC.txt).

5.  An Opticon load file (OPT) must be provided for hard copy productions.