IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RYAN LACON,** *Individually and on behalf of all others similarly situated*,<br><br>*Plaintiff*<br>v.<br><br>**EDUCATION PRINCIPLE FOUNDATION, et al.,**<br><br>*Defendants.* | Case No. 2:21-cv-03957-JDW |

## **MEMORANDUM**

There's a difference between something that is possible and something that is probable. "'Probably' means there's a good chance [something will happen,] 'possibly' means [it] might, [it] might not." The Pursuit Of Happyness (Columbia Pictures 2006). That distinction matters in the world of personal jurisdiction, where a court has to decide what conduct purposefully targets a jurisdiction. In the context of telemarketing calls, conduct that makes a phone call into a jurisdiction possible often will not be enough, but conduct that makes a call probable likely will. In this case, JobsFlag LLC sold lists of potential leads, and those sales made it possible that someone would call the individuals on those lists. But it did not do anything to make it probable that any particular call would happen. So even though JobsFlag sold a list that included Ryan Lacon's name and phone number, and Mr. Lacon received a call, JobsFlag did not target its activity at Pennsylvania. The Court therefore does not have personal jurisdiction over JobsFlag.

**I.     BACKGROUND**

In the first seven months of 2020, Ryan Lacon received a number of auto-dialed calls. At the end of July 2020, he feigned interest during one of the calls to figure out who kept calling him. Someone transferred Mr. Lacon to Dennis from "College Support," and Dennis then transferred Mr. Lacon to South University, Savannah LLC's "student support line." In making this and similar calls, Mr. Lacon alleges that South University and entities it hired violated the TCPA. He alleges South University worked with Double Positive Marketing Group, a Delaware corporation with its principal place of business in Maryland; Telesolutions d/b/a Graspy Media ("Graspy"), a Canadian company with its principal place of in Winnipeg, MB, Canada; Yodel Technologies, LLC, a Delaware limited liability company with its principal place of business in Utah; and JobsFlag, a Nevada limited liability company with its principal place of business in Utah. (*See id.* ¶¶ 15–19.)

**A.     The Marketing Roles**

The Defendants' roles in the recruitment process are as follows:  South University partners with Double Positive Marketing Group for "marketing services." (ECF No. 58 at ¶ 5.) Double Positive (on behalf of South University) contracts with Telesolutions d/b/a Graspy Media to "obtain leads and run telemarketing campaigns." (*Id.* ¶ 6.) Graspy, in turn, subcontracts with Yodel Technologies, LLC. Yodel places calls, runs the telemarketing campaign, and delivers "live leads" to Graspy. Both Yodel and Graspy contract with

JobsFlag to purchase "lead packets," which contain consumer telephone numbers used to make the calls. (*Id.* ¶¶ 6, 11(d).)

To call consumers, Yodel loads consumer phone numbers that it received from JobsFlag into dialer technology. If the dialing technology detects that a consumer answered the call, it transfers the call to an agent, who plays a pre-recorded message. If a consumer responds to prompts on the pre-recorded message, Yodel transfers the call to Graspy's call center. Once transferred, an individual at Graspy speaks to the consumer. Graspy may then transfer the call to South University's "student support line" where a sales agent recruits the consumer. (*Id.* ¶ 51.)

### B.     JobsFlag

The Second Amended Complaint does not specify how JobsFlag creates its lead packets. At least some leads come from its website, where consumers can search for opportunities and provide their names, physical addresses, email addresses, and phone numbers. But Mr. Lacon says he never entered his information on the website, so some of its leads may come from other sources. In its contract with Yodel and Graspy, JobsFlag gets paid for lead packets regardless of whether anyone contacts the leads. JobsFlag's employees are located in Utah and Oregon. It has no employees, operations, real estate, or assets in Pennsylvania.

### C.    Procedural History

Mr. Lacon filed this case on September 3, 2021. On April 12, 2022, Mr. Lacon filed his Second Amended Class Action Complaint against South University, Double Positive, Graspy, Yodel, and JobsFlag. On April 26, 2022, JobsFlag filed a motion to dismiss arguing, in part, that the Court does not have personal jurisdiction over it. JobsFlag also argued that the Court should stay the action and compel arbitration or dismiss the claims for failure to state a claim. Mr. Lacon opposed the Motion and argued, in part, that because JobsFlag "compiled and sold Plaintiff's personal information to other Defendants to make robocalls to his Pennsylvania phone number in this judicial District," it is subject to the Court's jurisdiction. The Motion is ripe for consideration.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). The court's review of a motion to dismiss under Rule 12(b)(2) is not limited to the pleadings, and the court may rely on sworn affidavits submitted by the parties or other competent evidence. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quotation omitted). In the absence of an evidentiary hearing, the plaintiff need only present a *prima facie* case of personal jurisdiction, and the court must take all of the plaintiff's factual allegations as true and resolve all factual disputes in the

plaintiff's favor. *See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010). The burden then shifts to the defendant to establish that the exercise of jurisdiction would be unreasonable. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992).

### III. ANALYSIS

In determining whether it has personal jurisdiction over an out-of-state defendant, a court must determine whether (a) the forum state's long arm statute authorizes the exercise of personal jurisdiction and (b) the exercise of jurisdiction comports with the Constitution. Because Pennsylvania's long-arm statute authorizes the exercise of jurisdiction to the extent the Constitution permits, the inquiry collapses to a Constitutional analysis. *See* 42 Pa. C.S.A. § 5422(b).

Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction over an out-of-state defendant requires that the defendant have "minimum contacts" with the forum state such that exercising jurisdiction would "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945) (quotations omitted). Personal jurisdiction can arise under two distinct theories: general jurisdiction and specific jurisdiction. *See Metcalfe*, 566 F.3d at 334. Mr. Lacon does not contend that this Court has general jurisdiction over JobsFlag, so the Court limits its analysis to specific jurisdiction.

For specific jurisdiction, the Third Circuit uses a three-part test to determine "minimum contacts": (1) a nonresident defendant must "purposefully direct" its activities at a resident of the forum; (2) the injury arises from, or relates to, those activities; and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice. *D'Jamoos ex rel. Estate of Weinegroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (internal citations omitted). The Parties dispute whether JobsFlag purposefully directed its activities to Pennsylvania, so that is where the Court focuses its analysis. The allegations in Mr. Lacon's Second Amended Complaint do not show that JobsFlag purposefully directed its activities to Pennsylvania.

JobsFlag's role in the telemarking scheme was to compile lead packets that it sold to Graspy and Yodel. JobsFlag had no control over what Graspy and Yodel did with those lead packets. It knew, of course, that they might call some or all of the individuals listed. But it was also possible that they would mail or email, rather than call. Or they might have compared the list to other marketing materials to winnow the universe of people they called. JobsFlag had no control over what Graspy and Yodel did with those contacts, and it did not monitor what they did. Nor was its compensation tied to the calls in any way. Once it sent the lead packets, its role ended. Because JobsFlag did not place calls to Pennsylvania, supervise or direct the companies that made those calls, or even monitor

whether those companies made calls at all, the cases on which Mr. Lacon relies, in which a company directed a third party to make a call, do not apply.[1]

Nothing about JobsFlag's role demonstrates any particular focus on or targeting of Pennsylvania. See O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 317 (3d Cir. 2007). It gathered information for contacts nationally, not just from the Pennsylvania market. Mr. Lacon argues that because the lead packets included phone numbers with Pennsylvania area codes, JobsFlag knew that Graspy or Yodel would make calls to Pennsylvania. But in an era of mobile phones, area codes do not always tie geographically to the user's location. Those Pennsylvania area codes could have users in New Jersey, California, or Alabama. And, it bears repeating that JobsFlag did not know that Graspy or Yodel would call **any** particular individual in the lead packets. Just as websites that collect information nationally do not target a particular jurisdiction where they are active, the provision of a national list of leads does not target every jurisdiction included in the lead packet. Cf. Ketayi v. Health Enrollment Grp., 516 F. Supp. 3d 1092, 1116–17 (S.D. Cal. 2021) (national lead generating websites did not target the California market in particular); Allen v. IM Sols., LLC, 83 F. Supp. 3d 1196, 1202–08 (E.D. Okla. 2015). While JobsFlag might have made it **possible** that Graspy or Yodel would call someone in Pennsylvania, it did not make it **probable** or otherwise engage in conduct that targeted Pennsylvania.

---

[1] See, e.g., Abramson v. Agentra, LLC, Civ. A. No. 18-615, 2018 WL 6617819, at *1, *4–5 (W.D. Pa. Dec. 18, 2018); Ott v. Mortg. Inv'rs Corp. of Ohio, Inc., 65 F. Supp. 3d 1046, 1057–58 (D. Or. 2014); Hudak v. Berkley Grp., Inc., 2014 WL 354676, at *2 (D. Conn. Jan. 23, 2014)

## IV. CONCLUSION

JobsFlag's attenuated, indirect contacts with Pennsylvania, taken together, do not rise to the level of activity targeted at Pennsylvania. The Court therefore does not have personal jurisdiction over JobsFlag. Lacking jurisdiction, the Court cannot rule on JobsFlag's motion to compel arbitration or to dismiss the Complaint. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
**JOSHUA D. WOLSON, J.**

June 22, 2022